MODERN WOODMEN OF AMERICA v. BAKER.

No. 2761.

Court of Civil Appeals of Texas. El Paso.
Jan. 12, 1933.

Rehearing Denied Feb. 2, 1933.

Sullivan, Speer & Minor, of Denton, and Burgess, Burgess, Chrestman & Brundidge, of Dallas (Geo. G. Perrin, of Rock Island, Ill., of counsel), for appellant.

King S. Williamson and J. H. Synnott, both of Dallas, for appellee.

PELPHREY, C. J.

Appellee instituted this suit against appellant seeking to recover the sum of $2,000, alleged to be due her on a benefit certificate issued to her deceased husband, Bruce B. Baker, by appellant, and 12 per cent. penalty for refusal to pay upon demand together with attorney's fees in the sum of $500.

Appellant affirmatively defended on the ground that Bruce B. Baker came to his death while being engaged in a violation of law; that he was killed in consequence of being engaged in an attempted violation of the law; and that he was killed in consequence of being engaged or participating in a personal quarrel, controversy, or altercation in which he was the aggressor, which by reason of the provisions of the certificate and appellant's by-laws rendered the certificate null and void.

It is undisputed that Baker died shortly after having been stabbed by William H. Hunter at City Barn No. 4, which was used by the street and bridge department of the city of Dallas, on July 12, 1930.

The single issue submitted to the jury reads: "Do you find from the preponderance of the evidence that Bruce B. Baker, in the altercation resulting in his death, was the aggressor, as that term is hereinafter defined to you?"

The following definition was given: "The term 'aggressor' as used in this charge, means a person who brings on an altercation with another person by some act or demonstration such as would indicate to a reasonable mind a present intention on the part of such person to do such other person serious bodily harm."

Upon a negative finding by the jury, the court rendered judgment in favor of appellee for $2,000, with 6 per cent. interest thereon from January 1, 1931.

This appeal is from such judgment.

Opinion.

Appellant's brief contains fifteen assignments of error, upon which are based eight propositions.

In its first two propositions appellant contends that it was entitled to an instructed verdict because the undisputed evidence shows that Baker engaged in a fight and died in consequence thereof, and that his death occurred through engaging or participating in a personal quarrel, controversy, or altercation in which he was the aggressor.

Appellant, under his theory that the 'uncontradicted evidence shows that Baker was killed while engaged in a violation or attempted violation of the law, asserts that the undisputed evidence shows that he engaged in an affray as defined by article 473, of the Penal Code, and, further, that he was guilty of an assault or assault and battery under article 1138 of that Code.

Appellee in her argument admits that, if the deceased was engaged in a violation of the law at the time of his death, or died in consequence of a fight in which he was the aggressor, then appellee cannot recover, but she urges that the jury had the right to reject the testimony of both Hunter and Moore and decide the issue as to whether deceased was the aggressor from the circumstances, or, the burden being upon appellant to show

that the deceased was the aggressor, find the issue against appellant for want of credible testimony.

She contends that, Hunter having an interest by reason of the fact that he was still subject to indictment and prosecution for the killing of Baker, and being contradicted in some particulars by Moore, and further by the evidence showing that the wounds inflicted on deceased could not have been made by the knife which he testified he used, the jury was at liberty to wholly disregard his testimony.

 We agree with this contention, but we fail to agree with the contention that the testimony of the witness Moore was in the same condition. In other words, we fail to see how Moore, under the facts and circumstances here reflected, would have any fear of later being indicted for the killing of Baker, and we cannot agree that the fact that Moore gave no assistance to Baker, conceding that he knew he had been dangerously injured, and that the evidence showed that a longer knife had been used in the stabbing of Baker than Hunter admitted using, would justify the assumption that probably Moore had used the other and longer knife. Therefore his testimony would not fall within the rule that the testimony of an interested party, though not contradicted, raises only an issue for the determination of a jury, and, unless there be some other evidence or some fact or circumstance which contradicts his testimony, then appellant was entitled to an instructed verdict, that is, provided his testimony shows either that deceased was killed while engaged in a violation of the law or while engaged in an altercation in which he was the aggressor.

 In support of her argument that appellant has adduced no credible testimony at all, and that the undisputed facts and circumstances prove that deceased was not the aggressor, she advances the following:

"Now let us look at this testimony and see what the jury had a right to believe, and did believe. We know one thing, and that is that Hunter did not stab Baker with the knife the blade of which had been broken down to a length of one inch, and with which he had been scraping dynamite fuses. We know the knife blade that killed Baker, whoever wielded it, had a long slim blade, three and one-half inches long. This being true, then the jury must look to something else, and not to the testimony of the witnesses as to who killed the deceased, or with what instrument."

"They proved with their own testimony that deceased was a powerful man, weighing over two hundred pounds, standing nearly six feet tall, while the supposed killer was five feet five inches tall, weighing less than 140 pounds. According to their testimony, deceased approached the killer, never having exhibited any ill temper before, spoke to him, and as the killer was rising from his seat, struck him, knocked him down or nearly down two or three times, and then ran from him. The jury might well believe that as the killer rose to his feet, he rose with an open knife in his hand, and that the deceased struck him to protect himself. It is true, that nobody said he had the open knife in his hand then. But we do know that he did not get out his knife and open it at the time he says he did. They would have you believe that after Baker had knocked this man down three times, he ran away from him and did not return until he armed himself with two whole bricks. Why would this powerful man run from this little weakling whom he had knocked down three times as easily as one could knock down a straw man, if his weapon was not in use at the time."

While the testimony of the undertaker as to the depth of the wounds refutes the testimony of Hunter that they were inflicted by a knife with a blade about an inch long, still that testimony casts no reflection upon Moore's testimony, for he not only did not attempt to describe the knife, but testified that he did not see the knife at all.

The further theory that the jury could have believed the deceased struck Hunter, when Hunter raised up from his seat with an open knife in his hand, and that he ran from him and armed himself with the bricks because Hunter was using his knife at that time, appears to be going out quite a ways into the realm of speculation.

There is not a scintilla of evidence here to show that the knife was used before Hunter says it was, and the only thing even tending to place suspicion upon it is the fact that he testified that he shook it open with one hand.

Moore says he was in a position to see Hunter when the difficulty started, saw him getting up, saw him almost knocked down, saw him trying to get his children out of the way, saw him ward off the brick with his arms, and still says he saw no knife. Wouldn't it be more plausible to say that Hunter did not get out his knife until after he was on the ground, where Moore's failure to see the knife could be explained by the fact that Baker was either bending over or on top of him?

Moore's testimony was that Baker came up to where Hunter was sitting, told him he had seen him stealing gasoline out of a tractor; that Hunter started to get up, called Baker a damned liar; that Baker then struck Hunter, knocking him back against the bench, walked just around the corner of the house, got a brick, came back, and hit Hunter on the elbow with it; and that then they went together, fell on the ground, with Baker on top.

We have been unable to find any evidence, fact, or circumstance which contradicts this testimony; therefore, if it shows that Baker was engaged in a violation of the law or was the aggressor in the altercation, the trial court should have granted appellant's request for an instructed verdict.

An affray is defined in the Penal Code: "If any two or more persons shall fight together in a public place they shall be fined not exceeding one hundred dollars."

An assault and battery is thus defined: "The use of any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used, is an assault and battery."

It is well established that a person acting in his own self-defense would not be guilty under either of the statutes, but it appears to us that under the facts here deceased was engaged in a violation of at least one of them when he met his death.

It may be said that the evidence is not sufficient to show that the place where this difficulty occurred was a public place within the purview of the statute, but we think it clearly shows that Baker engaged in an assault and battery, and was the aggressor in the altercation from which he died.

The judgment of the trial court will be accordingly reversed, and judgment here rendered that appellee take nothing.